# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| HUMAN RIGHTS DEFENSE CENTER, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:18CV00013 |
| v. | ) ) | **OPINION AND ORDER** |
| SOUTHWEST VIRGINIA REGIONAL JAIL AUTHORITY, ET AL., | ) ) ) ) ) | By: James P. Jones United States District Judge |
| Defendants. | ) | |

*Thomas G. Hentoff, Sean M. Douglass, and Thomas S. Chapman,* WILLIAMS & CONNOLLY LLP, *Washington, D.C., Bruce E. H. Johnson,* DAVIS WRIGHT TREMAINE LLP, *Seattle, Washington, and Daniel Marshall,* HUMAN RIGHTS DEFENSE CENTER, *Lake Worth, Florida, for Plaintiff; Katherine C. Londos and Nathan H. Schnetzler,* FRITH ANDERSON + PEAKE, P.C., *Roanoke, Virginia, for Defendants.*

In this suit by a prisoners' rights organization against a jail authority and its superintendent under 42 U.S.C. § 1983, I previously granted summary judgment for the plaintiff on its First Amendment claim against the jail authority and on its due process claim against both defendants. Earlier in the case, I had entered a preliminary injunction, which remains in effect. Following the entry of summary judgment, the parties agreed to an amount of compensatory damages, and the plaintiff renewed its request for a permanent injunction. For the reasons that follow, I will grant the plaintiff's request and enter a permanent injunction.

I.

The facts of this case are set forth in detail in my opinion granting in part and denying in part the plaintiff's motion for summary judgment. *Human Rights Def. Ctr. v. Sw. Va. Reg'l Jail Auth.*, 396 F. Supp. 3d 607 (W.D. Va. 2019). In summary, I held that the Southwest Virginia Regional Jail Authority ("Jail Authority") had violated plaintiff Human Rights Defense Center's ("HRDC") First Amendment rights by (1) prohibiting inmates from receiving books except those preapproved by the Jail Authority; and (2) prohibiting inmates from receiving any magazines. I further held that the Jail Authority and Superintendent Stephen Clear had violated HRDC's due process rights under the Fourteenth Amendment by rejecting or confiscating HRDC's mailings to prisoners without providing adequate notice of the reason for the rejection and an opportunity for HRDC to appeal the decision.

Based on these rulings, HRDC seeks a permanent injunction that orders as follows:

a. Defendants shall deliver to incarcerated persons publications that are mailed to them, subject to a reasonable inspection to ensure that any such publication does not present a threat to a legitimate penological interest. Defendants may remove any items in the mail that present a threat to a legitimate penological interest. Defendants may place reasonable limits on personal property that incarcerated persons possess in cells or common areas.

    b. If Defendants refuse for any reason to deliver any publication mailed to an incarcerated person, Defendants shall provide written notice to the sender within three (3) business days of the rejection, and shall provide the sender with an opportunity to appeal the rejection within at least fifteen (15) days from receipt of written notification of the rejection. Such written notice shall include, at minimum: (i) the name and address of the sender as well as the name of the intended recipient, (ii) a specific description of the refused publication, including reference to a specific issue if the publication is a periodical, (iii) a citation to the objectionable portion of the publication, (iv) an explanation why the publication threatens a legitimate penological interest; and (v) information regarding the sender's right to appeal the rejection decision, including the name and address of the person to whom such an appeal should be addressed and the date by which any appeal must be submitted.

Pl.'s Proposed Order & Permanent Inj. 2–3, ECF No. 56-1.

    The defendants argue that HRDC has not met its burden of showing that it is entitled to a permanent injunction. They have submitted a declaration of Superintendent Clear describing significant contemplated policy changes regarding the Jail Authority's handling of prisoner mail and publications. The defendants say these planned changes undermine HRDC's claim that it will suffer irreparable harm in the absence of an injunction.

    Specifically, Clear avers that approximately four months ago, the Jail Authority "began negotiations with a third-party vendor for the purpose of processing inmate mail off-site and delivery of inmate mail in electronic form via tablets and kiosks in the facility housing units." Defs.' Mem. Opp'n Req. for

Permanent Inj. Ex. A ¶ 4, ECF No. 121-1. The Jail Authority is currently involved in the procurement process and hopes to enter into a contract with the vendor this spring. The vendor will scan mailings to inmates in a high-resolution color format and send them to the Jail Authority, which will then inspect them and release them to inmates for electronic viewing.

Because inmates will possess significantly less paper mail under this system[1] they will be permitted to receive a greater quantity of books shipped from publishers or checked out from a facility book room. "Books received at the facilities directly from a publisher will be inspected for contraband and reviewed for security concerns and then delivered to the inmate." *Id.* at ¶ 9. Clear does not define contraband or indicate what security concerns might warrant rejecting a book; thus, it appears that the person inspecting each book will retain significant discretion in deciding whether to approve or reject the book. According to Clear, "[i]nmates no longer must obtain preapproval in order to receive books directly from a publisher." *Id.* at ¶ 10. HRDC notes that the written policies in the record still require preapproval, and the defendants have not submitted any adopted or proposed written policy that does not require preapproval.

---

[1] Mail from attorneys will still be sent directly to the Jail Authority facility where the inmate is housed, but attorneys will also have the option of emailing inmates.

Additionally, Clear states that publications such as HRDC's periodicals, which are sent directly from a publisher, will be processed by the third-party vendor like other inmate mail. Inmates will be able to access these publications on an electronic kiosk or tablet, which will also contain a messaging function similar to e-mail. The kiosks and tablets will contain education courses, self-help materials, religious materials, and other content, along with a virtual law library, which inmates will be able to access for free. The tablets and kiosks will further offer streaming entertainment media. The Jail Authority "plans to supply tablets to each housing unit on a ratio of 1 tablet to 6 inmates." *Id.* at ¶ 16.

## II.

To obtain a permanent injunction,

> "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Whether to grant an injunction is a decision within the court's equitable discretion. *Id.*

"As to irreparable injury, it is well established that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011) (internal quotation marks, alterations, and citation omitted). "Moreover, monetary damages are inadequate to compensate for the loss of First Amendment freedoms." *Id.* I therefore find that HRDC has satisfied the first two factors.

The record reveals no indication that the proposed injunction would result in any hardship to the defendants, who have already been complying with a similar preliminary injunction for more than a year and a half. *See* Prelim. Inj., July 3, 2018, ECF No. 38. As I found in my summary judgment opinion, "[t]here is no evidence that there have been any problems related to books within the Jail Authority's facilities since the court's preliminary injunction went into effect." *Human Rights Def. Ctr.*, 396 F. Supp. 3d at 619. Likewise, there is no evidence showing any significant burden or safety issue related to delivery of magazines since the entry of the preliminary injunction. *Id.* at 622. I find that the third factor, the balance of hardships, weighs in favor of entering a permanent injunction.

"[U]pholding constitutional rights is in the public interest." *Legend Night Club*, 637 F.3d at 303. Furthermore, as I previously noted, "[p]roviding adequate reading material to inmates serves the interest of rehabilitating inmates and of

preventing security problems by avoiding idleness, boredom, and disruptive behavior." *Human Rights Def. Ctr.*, 396 F. Supp. 3d at 616. HRDC has met its burden as to the fourth consideration for entry of a permanent injunction, and the defendants have not offered any evidence to show that the proposed injunction is likely to adversely affect any interest of the public.

The defendants argue that HRDC has not shown that they are likely to violate its rights in the future because of the contemplated policy changes regarding mail delivery and because they have instituted a confiscation appeal period of fourteen days. They also argue that Clear's entitlement to qualified immunity on the First Amendment claim counsels against the entry of an injunction, although the reasoning behind that argument is not well-explained.

While the defendants do not specifically frame their position in terms of mootness, they appear to argue that their voluntary change in policy moots any need for an injunction. In order for the defendants' voluntary cessation to moot the request for an injunction, the defendants would have to show that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Porter v. Clarke*, 852 F.3d 358, 360 (4th Cir. 2017) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). "In the context of conditions of confinement cases, in particular, courts have found that a change

that completely and irrevocably eradicates the effects of the condition or policy subject to challenge renders an action moot." *Id.* at 364 (internal quotation marks, alterations, and citations omitted). "By contrast, a defendant fails to meet its heavy burden to establish that its allegedly wrongful behavior will not recur when the defendant retains the authority and capacity to repeat an alleged harm." *Id.* (internal quotation marks and citation omitted). "In the context of litigation regarding the policies governing prisoners' conditions of confinement, in particular, courts have refused to find a challenge to an abandoned policy or practice moot when the prison refuses either to promise not to resume the prior practice . . . or to otherwise unambiguously terminate the challenged practice." *Id.* at 365 (internal quotation marks, alterations, and citations omitted).

I find the defendants' arguments unpersuasive, primarily because the anticipated policy and procedural changes have not yet been implemented. Moreover, even if they are implemented in short order, the defendants retain the right to change them at any time. The expected changes described by Clear thus do not provide adequate protection of HRDC's rights at the present time.

The defendants also assert that the $1,500 in compensatory damages to which they have agreed, along with an as-yet-undetermined award of attorneys' fees and costs in this case and the prospect of future litigation costs, provide adequate

deterrence to prevent them infringing HRDC's rights in the same way in the future. Of this, too, I am unpersuaded. While these litigation-related expenses surely do provide some deterrent effect, I find that a clear directive is needed to ensure that HRDC's rights are not violated again in the future.

The defendants argue that the requested relief is overly broad and insufficiently specific, essentially directing them to follow the law. I disagree. Federal Rule of Civil Procedure 65(d)(1) requires that an injunction must "state its terms specifically" and "describe in reasonable detail — and not by referring to the complaint or another document — the act or acts restrained or required." HRDC's proposed injunction satisfies this rule. It does not merely tell the defendants that they must comply with the law. It includes exceptions for delivery of publications designed to protect the Jail Authority's legitimate penological and security interests, rendering it narrowly tailored, and it sets forth in detail the requirements for all rejection notices.

The defendants complain that HRDC's proposed injunction "places an undue burden on jail officials to determine when a sender 'receives' notice of a rejection." Defs.' Mem. Opp'n Req. for Permanent Inj. 7, ECF No. 121. That concern can be remedied by starting the appeal period on the date the Jail Authority sends the confiscation notice and extending the length of the appeal period beyond fourteen

calendar days to account for potential delays in mail delivery. I will craft the portion of the permanent injunction addressing appeals accordingly.

Finally, the defendants argue that the proposed injunction does not comply with the Prison Litigation Reform Act ("PLRA"). HRDC counters that the PLRA does not apply to actions seeking to vindicate the civil rights of non-prisoners.

The PLRA provides,

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a). The PLRA applies to civil actions "with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2). "The PLRA unambiguously applies to only those suits filed by prisoners." *Doe ex rel. Doe v. Washington Cty.*, 150 F.3d 920, 924 (8th Cir. 1998).

Because this suit was not brought by a prisoner, but rather by HRDC to vindicate its own constitutional rights, any injunction entered is not required to comply with the PLRA. Even if the PLRA did apply here, I would find that the

injunction to be entered does satisfy its requirements, as it is no broader than necessary to prevent the further violation of HRDC's constitutional rights.

III.

For the reasons given, it is **ORDERED** that the plaintiff's motion for a permanent injunction is GRANTED. A separate Permanent Injunction and a Final Judgment will enter herewith.

ENTER: March 25, 2020

/s/ *James P. Jones*
United States District Judge