**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | | |
|---|---|---|
| **HUMAN RIGHTS DEFENSE CENTER,** | ) | |
| Plaintiff, | ) | Case No. 1:18CV00013 |
| v. | ) | **OPINION AND ORDER** |
| **SOUTHWEST VIRGINIA REGIONAL JAIL AUTHORITY, ET AL.,** | ) | By: James P. Jones<br>United States District Judge |
| Defendants. | ) | |

*Thomas G. Hentoff, Sean M. Douglass, and Thomas S. Chapman, WILLIAMS & CONNOLLY LLP, Washington, D.C., Bruce E. H. Johnson, DAVIS WRIGHT TREMAINE LLP, Seattle, Washington, and Daniel Marshall, HUMAN RIGHTS DEFENSE CENTER, Lake Worth, Florida, for Plaintiff; Katherine C. Londos and Nathan H. Schnetzler, FRITH ANDERSON + PEAKE, P.C., Roanoke, Virginia, for Defendants.*

In this suit by a prisoners' rights organization against a jail authority and its superintendent under 42 U.S.C. § 1983, I previously granted summary judgment for the plaintiff on its First Amendment claim against the jail authority and on its due process claim against both defendants. The parties stipulated to compensatory damages in the amount of $1,500, and the plaintiff agreed to waive its demand for punitive damages against the superintendent on the due process claim. I then entered a permanent injunction. The plaintiff has now moved for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988. For the reasons that follow, I will award the plaintiff its fees and costs, but in a reduced amount.

I.

The plaintiff in this case, Human Rights Defense Center ("HRDC"), is a non-profit organization that, among other things, distributes books, magazines, and other information concerning legal news, prisoners' rights, and current events to prisoners. Defendant Southwest Virginia Regional Jail Authority ("Jail Authority") prohibited all inmates in its several jails in this area of Virginia from obtaining any magazine or from obtaining a book without prior permission to order the book in question.

The facts of this case are set forth in detail in my opinion granting in part and denying in part the plaintiff's motion for summary judgment. *Human Rights Def. Ctr. v. Sw. Va. Reg'l Jail Auth.*, 396 F. Supp. 3d 607 (W.D. Va. 2019). In summary, I held that the Jail Authority had violated HRDC's First Amendment rights by (1) prohibiting inmates from receiving books except those preapproved by the Jail Authority; and (2) prohibiting inmates from receiving any magazines. I further held that the Jail Authority and Superintendent Stephen Clear had violated HRDC's due process rights under the Fourteenth Amendment by rejecting or confiscating HRDC's mailings to prisoners without providing adequate notice of the reason for the rejection and an opportunity for HRDC to appeal the decision.

HRDC began sending publications to Jail Authority inmates in 2016. HRDC, which frequently litigates cases similar to this one, employs four or five in-house

attorneys and several paralegals. Its in-house attorneys began recording time related to the Jail Authority dispute on May 23, 2016. HRDC retained the law firm of Williams & Connolly LLP ("W&C"), based in Washington, D.C., in December 2017, and attorneys from that firm began recording time related to the dispute on January 30, 2018. HRDC filed its Complaint on March 28, 2018.

HRDC seeks an award of fees for the work of ten attorneys and three paralegals. These timekeepers include Thomas Hentoff, Partner, W&C (41.8 hours); Sean Douglass, Associate, W&C (614.5 hours); Chelsea Kelly, former Associate, W&C (66.6 hours); Thomas Chapman, Associate, W&C (164.1 hours); Daniel Marshall, General Counsel, HRDC (236.5 non-travel hours plus 12.5 travel hours); Lance Weber, former General Counsel, HRDC (2.3 hours); Sabarish Neelakanta, former General Counsel, HRDC (5.0 hours); Eric Taylor, Staff Attorney, HRDC (8.7 hours); Deborah Golden, former Staff Attorney, HRDC (11.3 hours); Masimba Mutamba, former Staff Attorney, HRDC (10.1 hours); and HRDC Paralegals, (172.2 hours). It seeks payment at the following hourly rates: $390 for Hentoff; $250 for Douglass; $225 for Kelly; $200 for Chapman; $380 for Marshall's non-travel time and $190 for his travel time; $390 for Weber; $350 for Neelakanta; $350 for Taylor; $380 for Golden; $250 for Mutamba; and $125 for the HRDC paralegals. HRDC asserts that it has removed from its request hundreds of hours expended on

this case and has reduced the usual rates of the W&C attorneys by more than half. HRDC further requests reimbursement of expenses in the amount of $16,053.59,[1] a number that likewise reflects significant reductions from the actual expenses incurred in the course of litigating this matter.

The defendants object on numerous grounds to both the number of hours and the hourly rates sought by HRDC, as well as to certain expenses HRDC seeks to recover. The motion for fees and costs has been fully briefed and is ripe for decision.

II.

In a federal civil rights action such as this one, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C.A. § 1988(b). A fee is reasonable if it would be "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Purdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

The first step in determining a reasonable fee is to calculate the so-called lodestar figure, which consists of a reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate. *McAfee v. Boczar*, 738 F.3d 81, 88

[1] HRDC initially requested costs of $18,621.60, but in its reply brief, it agreed to reduce its request in response to certain objections raised by the defendants.

(4th Cir. 2013). In the Fourth Circuit, "[t]o ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)." *Id.* The *Johnson* factors are:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*McAfee*, 738 F.3d at 88 n.5.

In determining the reasonable number of hours, I should exclude any recorded hours that were not reasonably expended. "Cases may be overstaffed, and the skill and experience of lawyers vary widely." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* (internal quotation marks and citation omitted). The Fourth Circuit has recognized the "need to avoid the use of multiple counsel for tasks where such use is not justified by the contributions of each attorney" and has noted that "[g]eneralized billing by multiple attorneys on a

large case often produces unacceptable duplication." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994).

The party seeking fees bears the burden of proving that the hourly rate sought is reasonable. *McAfee*, 738 F.3d at 91. "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits." *Rum Creek*, 31 F.3d at 175. "In circumstances where it is reasonable to retain attorneys from other communities, however, the rates in those communities may also be considered." *Id.* The prevailing party bears the burden of proving "what attorneys earn from paying clients for similar services in similar circumstances." *Depaoli v. Vacation Sales Assocs., L.L.C.*, 489 F.3d 615, 622 (4th Cir. 2007) (quoting *Rum Creek*, 31 F.3d at 175).

"[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Purdue*, 559 U.S. at 551. The goal in calculating a fee award "is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Thus, "courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

After determining the lodestar figure, I must deduct fees for any hours spent on unsuccessful claims that are unrelated to successful claims. *Hudson v. Pittsylvania Cty.,* 774 F.3d 231, 237 (4th Cir. 2014). I should then award a percentage of the remaining fee amount based on the plaintiff's degree of success in the litigation. *Id.*

Here, as is often the case, attorney's fees will not be paid by the individuals who violated the plaintiff's rights. It is therefore important to calculate a fee that is adequate but that does not create "windfalls to attorneys." *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986) (internal quotation marks and citation omitted).

III.

*A. Lodestar Figure.*

1. Hours.

The time records submitted by HRDC reveal that overstaffing clearly resulted in an excessive expenditure of time on this case. The large number of timekeepers working on this matter was due in part to turnover at HRDC and W&C rather than intentional staffing decisions. Nevertheless, the defendants should not be required to pay fees incurred due to the duplication of effort that inevitably happens when so many attorneys and paralegals work on a case.

W&C Partner Thomas Hentoff and W&C Associate Sean Douglass were involved in this case from the time W&C was first retained, which was approximately three months prior to the filing of the Complaint. Hentoff and Douglass together recorded most of the hours claimed by W&C. This case was not particularly complex, and I find that it would have been reasonable for a firm to staff the matter with one partner and one associate. To eliminate excess hours billed by W&C Associates due to duplication of effort, a need to bring them up to speed on the matter, and their limited experience, I will disallow the hours recorded by Kelly and Chapman.

Similarly, I find it appropriate to award fees for the work of only the two most involved in-house attorneys, General Counsel Daniel Marshall and former Staff Attorney Deborah Golden. Marshall's work on the case began on March 31, 2017, a year before the Complaint was filed, and continued through briefing of the motion for attorneys' fees. I will therefore disallow the relatively small number of hours recorded by Weber, Taylor, Neelakanta, and Mutamba. While these other attorneys may have made meaningful contributions to the case, I conclude that restricting fees to the hours expended by two in-house counsel and two outside counsel — four attorneys rather than ten — provides an appropriate starting point for determining

the number of hours reasonably expended on this case. I will also award fees for the work of the three HRDC paralegals, subject to the reductions indicated below.

Douglass performed most of the legal research, brief writing, and other drafting in this case on behalf of HRDC. HRDC filed briefs in support of its Motion for Preliminary Injunction, its Motion for Summary Judgment and Permanent Injunction, and supplemental briefing in support of a permanent injunction. In addition, HRDC submitted briefs in opposition to the defendants' Motion for Summary Judgment, Motion to Dismiss for Lack of Jurisdiction, and Motion to Exclude Plaintiff's Expert. Both parties filed and briefed motions in limine. Douglass edited the Complaint, prepared responses to discovery requests, and drafted discovery requests, various affidavits, correspondence to opposing counsel, and jury instructions. He conducted witness interviews and prepared for and participated in two hearings, a telephonic status conference, and several depositions. He also briefed the motion for fees and costs. HRDC seeks compensation for 614.5 hours of Douglass' time.

While Douglass performed high-quality work in this case, it appears that the amount of time he expended was due in part to his limited experience and in part to unnecessarily reinventing the wheel. HRDC has litigated numerous similar cases throughout the country. Marshall's declaration in support of the motion for fees lists

30 examples of federal cases since the year 2000 in which HRDC or its predecessor, Prison Legal News, was the plaintiff, and which involved the First Amendment rights of prisoners and their correspondents. This case asserted two straightforward constitutional claims. It would have been reasonable for Douglass to use pleadings, motions, briefs, and instructions from HRDC's prior cases as a starting point for the work he did in this case, which should have significantly reduced the number of hours required for research and drafting. I therefore find that a 25% reduction in Douglass' hours is appropriate. I will reduce Douglass' hours from 614.5 to 460.9. That number is the equivalent of nearly three months of full-time work on this case over a period of approximately two and a half years, which I find to be adequate given that HRDC will also be compensated for the work of three additional attorneys and three paralegals.

The defendants argue that once W&C was retained and the Complaint was filed, HRDC's in-house attorneys primarily served as client liaisons to outside counsel and performed little compensable legal work. The defendants request a reduction in an unspecified percentage to all time recorded by HRDC's in-house attorneys after the filing of the Complaint. I have reviewed all the submitted post-Complaint time entries recorded by Marshall and Golden, and I reject the defendants' contention. Both attorneys performed substantive legal work, such as

revising pleadings and motions and preparing for depositions. I decline to reduce the number of hours expended by Marshall and Golden on that basis.

The defendants request an unspecified reduction in the hours recorded by HRDC's paralegals due to block billing, billing for internal conferences, and billing for clerical tasks and tasks not directly in support of the litigation, such as updating subscriber lists. Block billing, where a timekeeper lists more than one task under the same time entry, makes it difficult to distinguish compensable tasks from noncompensable tasks. Purely clerical tasks such as mailing items and scheduling are generally considered part of an attorney's overhead and typically are not compensable at a paralegal rate. *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989). Examples of compensable paralegal tasks include "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Id.*

The time records of HRDC's paralegals contain several entries for mailing items to co-counsel and inmates, a number of block-billed entries, and entries for activities like verifying prisoner custody status and updating databases. In many cases, it is difficult to determine whether the paralegals' activities were conducted as part of preparing pleadings, exhibits, or briefs to be filed with the court, or whether

they were simply part of HRDC's normal operations of sending materials to incarcerated persons. In addition, the paralegals recorded a large number of time entries for very brief internal meetings. Often, no specific task was performed immediately following such a meeting. It is unclear whether these meetings represent status updates or meetings where an attorney simply gave a paralegal an assignment. Because of these various issues with the time entries of the HRDC paralegals, I will apply a 25% reduction to all paralegal time for which HRDC seeks compensation.

The aforementioned reductions produce the following numbers of hours reasonably expended:

- Thomas Hentoff, Partner, W&C: 41.8 hours;
- Sean Douglass, Associate, W&C: 460.9 hours;
- Daniel Marshall, General Counsel, HRDC: 236.5 non-travel hours plus 12.5 travel hours;
- Deborah Golden, former Staff Attorney, HRDC: 11.3 hours; and
- HRDC Paralegals: 129.15 hours,

for a total of 750.5 attorney non-travel hours, 12.5 attorney travel hours, and 129.15 paralegal hours.

The defendants request an 80% reduction in the number of hours recorded prior to the filing of the Complaint. They contend that it was improper for HRDC to spend more than a year and a half and in excess of 160 hours working on this case before filing suit. The reductions in hours I have already applied have the effect of reducing the pre-Complaint hours from 161.3 to 93.3, or approximately 58% of the pre-Complaint hours for which HRDC requested compensation. While this reduction is not as large as that requested by the defendants, I find that no further reduction in the number of pre-suit hours is appropriate. HRDC was required to gather factual information about confiscations at four Jail Authority facilities, communicate with numerous inmates, submit appeal forms, and attempt informal resolution before it could file its Complaint. The fact that this work occurred over a lengthy period of time is not in itself a sufficient reason to disallow compensation for hours incurred in 2016 and 2017, before W&C was retained and the case was ultimately filed.

Several of the *Johnson* factors support my conclusion that the numbers of attorney and paralegal hours listed above represent reasonable hours expended. Regarding the first *Johnson* factor, the starting point for calculating these numbers was the number of hours for which HRDC sought compensation, which I then adjusted downward to account for duplicative, excessive, and unclear billing.

HRDC represents that it already removed hundreds of hours from its time logs. While HRDC had a duty to exercise billing judgment prior to submitting its request for fees, its efforts in that regard do not prevent me from further reducing its recorded time in order to reach a number that I find reasonable given the facts and circumstances of the case. Applying the second *Johnson* factor, as I noted above, this case did not present particularly novel or difficult legal questions that would justify a larger expenditure of time. Rather, HRDC had previously litigated many similar cases. Similarly, this straightforward litigation did not demand the kind of special skills contemplated by the third *Johnson* factor. Considering these factors, I find that the number of hours produced by my stated reductions is a reasonable number of hours expended on this litigation. To the extent the defendants request elimination or reduction of specific line items on HRDC's time logs, I find that no further reductions are warranted.

2. Rates.

HRDC requests compensation for its attorneys and paralegals at the following hourly rates:

- $390 for Hentoff;
- $250 for Douglass;
- $380 for Marshall's non-travel time, and $190 for his travel time;

- $380 for Golden; and
- $125 for HRDC Paralegals.

In support of these rates, HRDC has filed a declaration of Brenda E. Castañeda, a civil rights attorney who practices with the Legal Aid Justice Center and teaches at the University of Virginia School of Law, both located in Charlottesville, Virginia. She has also practiced with Blue Ridge Legal Services in Harrisonburg, Virginia. In addition, Douglass declares that the rates sought by him and Hentoff are less than half of their usual hourly rates. HRDC also cites a number of cases within the Western District of Virginia in which attorneys with similar levels of experience were awarded fees at hourly rates similar to those they request.

The defendants contend that the rates sought by HRDC are excessive. They instead propose the following rates:

- $350 for Hentoff;
- $175 for Douglass;
- $225 – 250 for Marshall's non-travel time, and no compensation for his travel time; and
- $250 – 300 for Golden.

In support of these rates, the defendants have submitted a declaration of Lori J. Bentley, a Roanoke-based attorney who has represented the Jail Authority in the

past and whose firm appears to currently represent the Jail Authority. This apparent conflict of interest undermines the credibility of Bentley's opinions. Nevertheless, she notes that she previously advised similar hourly rates in another case in which HRDC was the plaintiff and which did not involve the Jail Authority. *See* Aff. of Lori J. Bentley, *Prison Legal News v. Nw. Reg'l Jail Auth.*, No. 5:15-CV-00061 (W.D. Va. Jan. 31, 2020), ECF No. 133-1.

Hentoff has 29 years of experience, including significant experience litigating cases involving 42 U.S.C. § 1983 and First Amendment claims. He co-chairs W&C's First Amendment and Media practice group and also works in the areas of intellectual property litigation and complex civil litigation. He has led teams that won Washington Lawyers' Committee Outstanding Achievement Awards for their pro bono representation of clients in prisoners' rights matters.

Douglass has 8 years of experience, including three years of judicial clerkships in federal district and appellate courts, two years with the U.S. Department of Justice's Office of Legal Policy, and approximately three years with W&C.

Marshall has 17 years of experience, mostly in the realm of criminal defense. He joined HRDC in 2017 and became General Counsel in 2019.

Golden has 21 years of experience, including extensive experience in civil rights litigation and prisoners' rights litigation in particular. In addition to her work with several other civil rights-focused non-profit organizations, she served four years as the director of the DC Prisoners' Project of the Washington Lawyers' Committee for Civil Rights & Urban Affairs. She has lectured and taught at the University of Virginia School of Law and the Georgetown University Law Center.

I find that the relevant community for determining rates in this case is southwest Virginia, where this court sits. As this case was not particularly complex or undesirable, I conclude it would have been possible for HRDC to obtain counsel located in the Abingdon or Roanoke divisions of the Western District of Virginia. Having considered the opinions of Castañeda and Bentley, my own knowledge of customary rates in the southwest Virginia legal community, the particular needs of this case, and fee awards in similar cases, I find the following hourly rates to be reasonable and will apply them in calculating the lodestar figure:

- $350 for Hentoff;
- $225 for Douglass;
- $300 for Marshall's non-travel time and $150 for his travel time;
- $300 for Golden; and
- $125 for paralegals.

While Hentoff has significant experience and a national reputation (*Johnson* factor nine), this case did not present novel or difficult questions (*Johnson* factor two) or require specialized skills (*Johnson* factor three). There is no indication that Hentoff's involvement in this matter came with any significant opportunity costs (*Johnson* factor four). While he supervised the W&C Associates who worked on this case, his direct involvement in the matter was relatively minimal. The case posed no unusual time limitations (*Johnson* factor seven). Contrary to the opinion of Castañeda, I do not find this case to have been particularly undesirable within the relevant legal community (*Johnson* factor ten).

Regarding the fifth and twelfth *Johnson* factors, five years ago, I found $300 to be a reasonable hourly rate for a partner-level attorney in an employment discrimination case against a government entity in southwest Virginia. *Atkins v. Va. Dep't of Transp.*, No. 1:13CV00057, 2015 WL 858870, at *3 (W.D. Va. Feb. 27, 2015). The attorneys in that case had approximately one third as many years of experience as Hentoff, so I conclude that an upward adjustment is appropriate here. Two years ago, in a civil rights case by a former inmate against the Virginia Department of Corrections, I again found that $300 an hour was a reasonable rate for a partner-level attorney in this geographic area. *Latson v. Clarke*, No. 1:16CV00039, 2018 WL 5802473, at *2 (W.D. Va. Nov. 6, 2018). That attorney

had about half as many years of experience as Hentoff, and I find that Hentoff's additional experience justifies the higher rate of $350 here. An hourly rate of $350 for Hentoff also mirrors the partner-level rate awarded last year in an employment case against another public entity in the Roanoke division of the Western District of Virginia. *Stultz v. Virginia*, No. 7:13CV00589, 2019 WL 4741315, at *5 (W.D. Va. Aug. 15, 2019) R. & R. adopted in relevant part, 2019 WL 4740241 (Sept. 27, 2019).[2]

Douglass has practiced with W&C for approximately three years and had only recently joined the firm when this case was filed. While he undoubtedly gained significant knowledge and experience in his three years of federal clerkships and two years with the Department of Justice, he appears to have had little actual litigation experience when he began working on this case. His resume does not reveal any specialized knowledge or experience in the areas of First Amendment, prisoners' rights, or civil rights litigation (*Johnson* factor nine). I therefore find the requested hourly rate of $250 to be excessive for the relevant legal market. A rate of $225 is

---

[2] HRDC cites *Quesenberry v. Volvo Grp. N. Am., Inc.*, No. 1:09CV00022, 2010 WL 2836201, at *8 (July 20, 2010), R. & R. adopted, 2010 WL 3521996 (W.D. Va. Sept. 3, 2010), in support of its request for a higher rate for Hentoff. *Quesenberry* was a class action asserting claims under the Labor Management Relations Act and the Employee Retirement Income Security Act. It was a significantly more complex case than this one and required a greater degree of skill. I find that the rates deemed reasonable in *Quesenberry* do not support awarding fees at the same rates in this case.

reasonable in this geographic area for an attorney of Douglass' experience level. *See Latson*, 2018 WL 5802473 at *2 (finding rate of $225 to be reasonable for associate attorney with five years of experience); *Stultz*, 2019 WL 4741315 at *5 (awarding rate of $225 for associate attorneys).

Marshall has extensive experience as a litigator, although his experience in civil cases is more limited. While as General Counsel with 17 years of experience, I consider him to be a partner-level attorney, he is far less experienced than Hentoff, particularly in First Amendment and prisoners' rights litigation. I find that a rate of $300 per hour is appropriate for Marshall. This rate reflects his experience and reputation (*Johnson* factor nine) and is in line with the rates I have found reasonable for attorneys of similar experience in similar cases in this legal market (*Johnson* factors five and twelve). *See Latson*, 2018 WL 5802473 at *2; *Atkins*, 2015 WL 858870 at *3. In accord with customary practice and HRDC's request, I find that Marshall's travel time should be compensated at half his usual rate, or $150 per hour.

Golden has extensive experience in the realm of prisoners' rights litigation and has more years of overall experience than Marshall, albeit fewer years of experience than Hentoff. Her tenure at HRDC as a Staff Attorney was brief, and her involvement in this case was limited. While the role of Staff Attorney is not

equivalent to a partner-level position, I find a rate of $300 per hour to be reasonable for Golden based on her significant experience (*Johnson* factor nine).

Finally, HRDC requests a rate of $125 per hour for each of its paralegals which the defendants do not contest.

Applying these rates to the reasonable hours expended, I find a total fee of $210,691.25 to be appropriate in this case.

My calculation of the lodestar figure incorporates most of the *Johnson* factors. I do not find that any of the remaining *Johnson* factors warrants an enhancement or reduction in the lodestar amount. HRDC contends that its pursuit of this litigation prevented it from pressing other litigation elsewhere in the country (*Johnson* factor four), but I am unpersuaded by that assertion given that it was actively litigating several other cases at the same time as this one, including one in the Roanoke division of this court. The amount in controversy in this case was not particularly large, but HRDC sought and obtained preliminary and permanent injunctive relief as well as declaratory relief (*Johnson* factor eight). Nonetheless, I do not believe HRDC's success in this regard warrants any enhancement of the lodestar figure. I find that the lodestar figure of $210,91.25 represents a reasonable number of hours expended on this litigation multiplied by reasonable hourly rates for the listed attorneys and paralegals.

*B. Adjustments for Unsuccessful Claims and Degree of Success Achieved.*

HRDC was successful at virtually every stage of this litigation. At the summary judgment stage, I found that defendant Clear was entitled to qualified immunity on HRDC's First Amendment claim. That holding, however, does not detract from HRDC's success because the claim against Clear was inextricably intertwined with the First Amendment claim against the Jail Authority. All the claims asserted in this case shared a common core of facts and cannot be considered unrelated to one another. Thus, no adjustment to the lodestar is warranted to account for unsuccessful claims.

In considering the degree of success obtained, I am required to compare the amount of damages sought to the amount recovered. *McAfee*, 738 F.3d at 93. The Complaint in this case did not seek a specified amount of damages; rather, it demanded nominal, compensatory, and punitive damages in amounts to be proved at trial. In an effort to streamline the litigation, HRDC ultimately agreed to waive its claim for punitive damages, and the parties agreed to compensatory damages of $750 for the First Amendment claim and $750 for the due process claim.

HRDC also sought declaratory relief and a preliminary and permanent injunction, both of which it obtained. In my view, securing declaratory and injunctive relief was HRDC's primary goal in this suit. It therefore achieved a high

degree of success. I thus conclude that it is entitled to receive 100% of the lodestar amount of $210,691.25.

This fee would be adequate to induce a competent attorney in the relevant market to undertake representation of a case like this. I therefore conclude that $210,691.25 is a reasonable attorney's fee under § 1988 and satisfies the purposes of the fee-shifting statute.

*C. Expenses.*

Under § 1988, a prevailing plaintiff in a civil rights action is entitled to recover "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988) (citation omitted); *see also Daly v. Hill*, 790 F.2d 1071, 1083–84 (4th Cir. 1986).

HRDC seeks reimbursement for postage, airfare, hotel lodging, meals, taxis, rental cars, gasoline, parking fees, tolls, the filing fee for the Complaint, court reporter fees, and process server fees. The travel expenses sought are related to counsel's attendance at witness interviews, court hearings, and depositions. HRDC asserts that it has already eliminated numerous expenses it incurred in litigating this case and seeks payment of only select essential costs.

The defendants argue that HRDC is not entitled to reimbursement for airfare, car rentals, and gasoline expenses for travel from Washington, D.C. to hearings, interviews, and depositions that took place within the Western District of Virginia. Instead, the defendants contend that this travel should be reimbursed at the then-applicable government mileage rate. The defendants also argue that the airfare prices for W&C counsel's flights from Washington, D.C. to Tucson, Arizona, and Fort Lauderdale, Florida, are unreasonably expensive. In addition, they assert that local travel expenses to and from airports and rental car facilities, such as taxi fares and parking fees, are not compensable. In response to these objections, "HRDC amends its request to further reduce airfare costs for W&C attorneys by half (from $3,991.22 to $1,995.61) and car rental and gasoline costs to apply Defendants' proposed mileage rate (from $751.56 to $697.16)." Pl.'s Reply Br. 21, ECF No. 139. I will accept HRDC's concession as reasonable.

The defendants contest the travel costs incurred by HRDC's corporate designee Paul Wright to attend the organization's deposition. Wright is based in Florida and flew to Washington, D.C., to testify at HRDC's Rule 30(b)(6) deposition. The defendants first contend that Wright was a party to the case, and the costs of witnesses who are parties are not reimbursable. Alternatively, they argue that the presumptive location of a corporate deposition is the place in which the suit

was filed. They therefore contend that HRDC is not entitled to reimbursement for any of Wright's travel costs related to attendance at the deposition. HRDC responds that Wright was not a party to the case and that it was the defendants' decision to depose HRDC in Washington, DC, rather than in Abingdon.

The defendants object to Marshall's travel costs to attend the summary judgment hearing on the ground that other attorneys represented HRDC at the hearing and Marshall did not actively participate in orally arguing the pending motions. In response, "to minimize disputes and further streamline the issues before the Court, HRDC amends its request for litigation expenses incurred by HRDC's General Counsel to eliminate from the HRDC Expense Record the round-trip cost of his flight to the hearing ($518.00)." *Id.* at 22.

The defendants object to Hentoff's travel costs to attend the preliminary injunction hearing and summary judgment hearing on the same grounds as Marshall's. HRDC counters that Hentoff contributed by advising the associates who examined witnesses and argued the motions.

I reject the defendants' arguments regarding the travel expenses of Hentoff and Wright. I find that Wright's travel to HRDC's Rule 30(b)(6) deposition in Washington, D.C. was reasonable. I further find that it was reasonable for Hentoff,

as a supervising partner, to attend the preliminary injunction and summary judgment hearings. I will therefore award travel-related expenses for Wright and Hentoff.

While HRDC has withdrawn its request for reimbursement of Marshall's airfare to travel to the summary judgment hearing, it has not withdrawn its request for reimbursement of his rental car, gasoline, airport parking, and meal expenses. I find that Marshall's attendance at the summary judgment hearing was reasonable and will allow the expenses.

As I have held that no fees will be awarded for the hours recorded by Kelly and Chapman, I will also decline to award reimbursement of their airfare and lodging expenses.

The allowed expenses total $14,871.89. I will require the defendants to reimburse HRDC for reasonable litigation expenses in that amount.

IV.

For the reasons given, it is **ORDERED** that the plaintiff's Motion for Attorneys' Fees and Costs, ECF No. 134, is GRANTED as modified by this Opinion and Order. Defendants Southwest Virginia Regional Jail Authority and Stephen Clear shall pay plaintiff Human Rights Defense Center attorneys' fees in the amount of $210,691.25 and expenses in the amount of $14,871.89, for a total of $225,563.14.

ENTER: August 24, 2020

/s/ *James P. Jones*
United States District Judge